**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARIA RIOS, on her behalf and on behalf of her minor son D.R.,

Plaintiff-Appellant,

v.

SUSAN RIEDEL; JAMES DICKENS,

Defendants-Appellees,

and

DOÑA ANA COUNTY; LINDELL WRIGHT; BRENT EMMANUEL,

Defendants.

No. 11-2081
(D.C. No. 1:08-CV-01213-JCH-GBW)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this appeal we must decide whether the defendant deputy district attorneys are entitled to qualified immunity for the advice they gave the sheriff's deputy who arrested plaintiff for allegedly interfering with the custodial or visitation rights of her son's father, in violation of New Mexico law.[1] We agree with the district court that the district attorneys are entitled to qualified immunity and so affirm the grant of summary judgment to these defendants.[2]

Plaintiff's son, D.R., was born in 2000. In 2001, a court determined Marvin Fielder to be the boy's biological father and ordered Fielder to pay child support, which he did. In 2003, Fielder was sent to prison. While in prison, he initiated a relationship with D.R. through letters and telephone calls, and plaintiff brought D.R. to visit Fielder one time in 2005. Fielder was released from prison in 2008 following the reversal of part of his conviction and remained free on bond pending retrial.

Once released from prison, Fielder told plaintiff he wanted D.R. to come visit him for the summer. Plaintiff was reluctant for D.R. to do so until he became more familiar with Fielder. In the meantime, plaintiff took D.R. with her to Mexico to live with her mother. Fielder subsequently told Inspector Wright of

[1]     In addition to the deputy district attorneys, plaintiff sued the arresting officer, Inspector Lindell Wright. Inspector Wright separately moved for summary judgment on qualified immunity grounds. The district court denied his motion and he subsequently settled with plaintiff.

[2]     Because we conclude the defendant district attorneys are entitled to qualified immunity, we need not reach their arguments about absolute immunity.

-2-

the Las Cruces Sheriff's Department that Fielder tried to maintain contact with D.R. while D.R. was in Mexico, but had difficulty doing so.

In June 2008, plaintiff contacted Fielder and arranged to meet him at a Golden Corral in Las Cruces to discuss visitation with D.R. Fielder later told Wright that plaintiff had said D.R. would be with her at the restaurant, and Fielder went to the Golden Corral believing he would see D.R. When he arrived, however, Fielder discovered that plaintiff had come to the Golden Corral alone. He later told Wright that plaintiff had told him he could see his son if he left his wife.

Sometime after this incident, Fielder's wife, who worked for the Sheriff's Department, contacted Wright. She told him that Fielder had been unable to see his son for three years and asked what Fielder could do. Inspector Wright told her Fielder should go to court and get a custody or visitation order.

On September 25, 2008, plaintiff contacted Fielder and told him she and D.R. were going to be staying at the Teakwood Inn in Las Cruces and Fielder could come see D.R. Fielder then contacted Wright and told him plaintiff and D.R. were staying at the Teakwood Inn and that plaintiff had told Fielder he could see D.R. if he would bring her his late child support. Wright asked Fielder if he had gone to court to get a visitation or custody order, and Fielder said he had not and that he would not be able to do so before plaintiff took D.R. back to Mexico.

-3-

Wright went to the Teakwood Inn to find plaintiff. He stated in his own summary judgment motion that he intended to "see[] if the parties could work with each other, go to court and develop a parenting plan." Aplt. App. at 204. Wright found plaintiff with D.R. in the parking lot and told her Fielder was trying to make contact with D.R. Wright stated in his summary judgment motion that plaintiff told him she was not going to allow Fielder to see D.R. Wright then called the District Attorney's Office and spoke first with defendant Deputy District Attorney Susan Riedel and then with defendant Deputy District Attorney James Dickens to see if there was probable cause to arrest plaintiff for custodial interference.

Wright stated in his summary judgment motion that he told the defendant district attorneys "that there was no parenting plan in place, Plaintiff had obstructed Fielder from seeing DR for 3 years, he described the Golden Corral incident, indicated that Plaintiff stated that she would return to Mexico with DR, Fielder would not have an opportunity to go to court over the matter and that Plaintiff did not want to go to court." *Id.* at 204-05. In her response to Wright's motion, plaintiff objected to the accuracy of some of the facts Wright told the defendant district attorneys, *id.* at 274, and contended that "Wright did not provide a full explanation of the facts to the district attorneys, speaking with them for only five minutes," *id.* at 273.

-4-

For their part, the defendant district attorneys stated in their summary judgment motion that Wright called Riedel to talk about a possible custodial interference offense and when Riedel learned that Fielder was involved, she told Wright she did not want to give him an opinion because she was involved in Fielder's pending criminal case. Riedel then referred Wright to defendant Dickens, though she admitted she may have told Wright he should continue to investigate the matter. In her response, plaintiff disputed Riedel's suggestion that she gave Wright no advice on whether plaintiff's actions constituted custodial interference.

Plaintiff did not, however, dispute defendant Dickens' description of his conversation with Wright. Dickens stated that Wright told him the following:

> Fielder had come to him with a custodial interference matter, Fielder had been determined to be the parent of the child (D.R.), that the mother (plaintiff) was not allowing Fielder to see his child, that plaintiff had been living in Mexico, that Fielder had seen the child when Fielder was in prison, but that after his release, plaintiff had not allowed Fielder to have physical contact with the child, that there were incidents where plaintiff would say that she would allow contact if Fielder broke up with his current wife or girlfriend, and that there had been an incident where plaintiff had come into town, met at a restaurant with Fielder and then refused to let him see his child unless he broke up with his current wife.

*Id.* at 19. Dickens further stated that he told Wright that "the custodial interference case 'sound[ed] good,'" i.e., that the matter was "leaning towards a case where you have probable cause of a custodial interference.'" *Id.* (quoting

Dickens' Dep., *id.* at 95). But Dickens advised Wright to contact plaintiff to further his investigation.

After speaking with Riedel and Dickens, Wright told plaintiff he could arrest her for custodial interference but he would prefer that she work things out with Fielder. Wright asked plaintiff to come with him to the Sheriff's Office. Once there, Wright spoke separately with plaintiff and Fielder in an attempt to reach a resolution. Wright stated in his summary judgment motion that he "ultimately decided he had to arrest Plaintiff because she refused to allow Fielder to see DR and because she indicated she would return to Mexico. [He] believed he had probable cause to arrest Plaintiff." *Id.* at 206. Wright charged plaintiff with custodial interference, but the charges were later dropped.

Plaintiff sued defendants Riedel and Dickens for allegedly violating her "Fourth Amendment right to be free of unreasonable seizures by advising Sheriff's Deputies to arrest and charge [her] with custodial interference." Aplee. Suppl. App. at 8.[3] The deputy district attorneys moved for summary judgment arguing they had absolute immunity from suit or, at the least, qualified immunity. The district court determined that defendants were not entitled to absolute

---

[3]     Plaintiff also asserted claims for interference with familial associations in violation of the First and Fourteenth Amendments and for violations of state law. She does not challenge the disposition of these claims on appeal and has therefore waived any appellate review of those claims. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

immunity for their advice to Inspector Wright, but they were entitled to qualified immunity.

To overcome defendant Riedel and Dickens' assertion of qualified immunity, plaintiff had to show *both* that (1) defendants violated her constitutional or statutory rights, and (2) the infringed rights at issue were clearly established in the law at the time of the allegedly unlawful activity, such that "every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 2083 (2011) (internal quotation marks omitted). For the law to be clearly established, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083.

Qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendants were entitled to qualified immunity even if there was no probable cause to arrest plaintiff, so long as it was reasonable for them to conclude that probable cause existed in light of the information they possessed. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* (internal quotation marks omitted).

In her response to their summary judgment motion, plaintiff did not acknowledge the deputy district attorneys' assertion of qualified immunity; she

directed her attention solely to the issue of absolute immunity. Plaintiff did argue that defendants knew or should have known there was no probable cause to arrest her for custodial interference, but she did not point to any clearly established law to support her arguments.

In advising Wright, defendants had to interpret New Mexico's custodial interference statute, which prohibits "any person, having a right to custody of a child, [from] maliciously taking, detaining, concealing or enticing away . . . with the intent to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody." N.M. Stat. Ann. 1978, § 30-4-4(B). The statute defines the "right to custody" as "the right to physical custody or visitation of a child arising from: (a) a parent-child relationship between the child and a natural or adoptive parent absent a custody determination; or (b) a custody determination." *Id.* § 30-4-4(A)(5). The statute requires that "the child [be] present in New Mexico at the time of the taking," regardless of "whether the intent to commit the offense is formed within our outside the state." *Id.* § 30-4-4(J).

Based on the facts Wright told them, it was reasonable for defendants to conclude there was probable cause to believe plaintiff was guilty of custodial interference. Wright said that Fielder was D.R.'s father and that there was no parenting plan in effect that altered Fielder's prima facie custodial rights. He told defendants that plaintiff had previously prevented Fielder from having physical

contact with D.R., she had taken D.R. to Mexico to live, and she had told Fielder he could not see his son unless he left his wife. Wright also said that D.R. was currently in Las Cruces and that plaintiff intended to take him back to Mexico to live. From these facts, defendants could reasonably conclude there was probable cause to believe that plaintiff was about to take D.R. from New Mexico with the intent of depriving Fielder of his custodial rights for a protracted period of time.

Plaintiff contended that Riedel and Dickens should have asked Wright more questions and that if they had, they would have learned that plaintiff was not a resident of New Mexico and that she had contacted Fielder for the purpose of allowing him to see D.R. that day. Plaintiff also argued that defendants should have known the custodial interference statute did not apply because the situation did not involve a kidnaping and because Fielder's status as D.R.'s biological father did not give him a right to custody under the statute. Finally, she suggested that Riedel and Dickens should not have relied on the facts related to them by Wright because Wright's source of information, i.e. Fielder, was a known felon.

The burden of identifying the clearly established law rested with plaintiff. *See Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991). Her failure to meet this burden is fatal to her claim.

Although plaintiff argued that Riedel and Dickens should have questioned Wright more closely, she cited no cases establishing the scope of a prosecutor's

duty to question a law enforcement officer who is seeking legal advice. Nor did she cite any clearly established law that would have required defendants to ascertain her state of residency before deciding whether there was probable cause to believe she had committed or was about to commit custodial interference. The custodial interference statute requires only that the child be present in New Mexico at the time of the offense, not that either the child or the offending parent be a resident of the state. Likewise, plaintiff provided no support for her assumption that had defendants learned that she contacted Fielder to permit him to see D.R. that day, it would not have been reasonable for them to conclude that her stated intention to take D.R. from Las Cruces to live in Mexico would constitute custodial interference.

Plaintiff contended that defendants should have known there was no probable cause to arrest her because the circumstances Wright related to them did not establish a kidnaping. But the New Mexico legislature has defined custodial interference as a separate offense from kidnaping. *Compare* N.M. Stat. Ann. § 30-4-4 (custodial interference), *with id.* § 30-4-1 (kidnaping). And the New Mexico Supreme Court has held that the purpose of the custodial interference statute is "to prevent persons with custodial rights from disrupting another person's right to custody," *State v. Munoz*, 129 P.3d 142, 146 (N.M. 2006), which was precisely the situation Wright described to defendants. Defendants contended that they reasonably concluded Fielder had a right to

custody under the custodial interference statute because Fielder was the parent of D.R. and no custody determination was in place. *See* N.M. Stat. Ann. § 30-4-4(A)(5) (defining the "right to custody"). Plaintiff challenged this contention, pointing to a New Mexico family court's subsequent determination that Fielder had no custodial rights and the magistrate judge's similar conclusion in his report and recommendation on Wright's summary judgment motion.

The New Mexico Supreme Court has held that "[a] concise statement of the rights of parents with respect to their children is difficult of expression," but "[p]rima facie, parents have the right to legal custody of their minor children." *Hill v. Patton*, 85 P.2d 75, 78 (N.M. 1938); *see also Roberts v. Staples*, 442 P.2d 788, 791 (N.M. 1968) ("Parents have a natural and legal right to custody of their children."). Although a New Mexico family court judge later ruled that Fielder had no custodial rights, no court had adjudicated plaintiff's and Fielder's respective custodial rights at the time of plaintiff's arrest. Further, the New Mexico case upon which the magistrate judge relied in determining that Fielder's status as D.R.'s biological father did not create a parent-child relationship within the meaning of the custodial interference statute was not interpreting that statute, but another statute, namely, New Mexico's Adoption Act, N.M. Stat. Ann. §§ 32A-5-1 to -45. Plaintiff did not point to any state or federal case holding that the New Mexico Supreme Court's assessment of the parent-child relationship for purposes of the parental consent provisions of the

Adoption Act, in *Helen G. v. Mark J.H.*, 175 P.3d 914 (N.M. 2007), governs the interpretation of the "right to custody" under the custodial interference statute. Nor did she point to any other clearly established law undermining the reasonableness of defendants' conclusion that Fielder had custodial rights under the custodial interference statute.

Finally, plaintiff argued that defendants should not have relied on Wright's account of the facts because he received his information from Fielder. But again, plaintiff did not point to any clearly established law demonstrating that it was unreasonable for defendants to rely on the information they received from Wright simply because the complaining witness had an unrelated felony conviction.

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge
