This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 30,398**

**JACK RENOLDS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant Jack Renolds appeals his conviction for one count of second degree criminal sexual penetration of a minor (CSPM II) in violation of NMSA 1978, Section 30-9-11(E)(1) (2007) (amended 2009). Defendant raises four issues on appeal. Defendant claims that the district court erred when it (1) allowed the State to amend the criminal information, (2) denied his motion for a direct verdict, (3) excluded the affidavit of a testifying witness, and (4) failed to properly instruct the jury on the element of "force or coercion." We affirm.

**BACKGROUND**

In the early morning hours of February 16, 2009, Defendant entered the bedroom of his thirteen-year-old step-daughter (Victim). Victim was sleeping with her face towards the wall, when Defendant approached Victim's bed, put his hands underneath her shorts and her underwear, and penetrated her vagina with his finger or fingers. In the morning, Victim told her mother what Defendant had done. Victim's mother took Victim for an examination by a sexual assault nurse examiner (nurse). Victim told the nurse what had happened, and the nurse examined her. The nurse found several injuries to Victim's vaginal area.

Defendant was charged by criminal information for one count of "criminal sexual penetration in the second degree (child 13-16)." The information detailed that

on or about February 16, 2009, . . . [D]efendant did insert to any extent his finger/s into the vagina of [Victim], and [Victim] was at least thirteen

2

but less than sixteen years old, and [D]efendant was a person who by reason of his relationship to [Victim] was able to exercise undue influence over [Victim] and used this authority to coerce her to submit to the sexual act, a second degree felony, contrary to Section 30-09-11(E)(1)[.]

At trial, after the State rested its case, Defendant moved to dismiss the charge because he believed that language in the information indicated he was charged under a version of the criminal code which had been repealed in 2007, and thus the State had charged him with a crime that no longer existed. In response, the State moved to amend the information to eliminate the language pointed to by Defendant and conform the language in the information to Section 30-9-11(E)(1), the statute under which Defendant was charged. This statute defined CSPM II as "all criminal sexual penetration perpetrated . . . by the use of force or coercion on a child thirteen to eighteen years of age[.]" Section 30-9-11(E)(1).[1] The State alerted the district court that this was the statute under which Defendant was initially charged and, as a result, there was no prejudice to Defendant in amending the language in the information describing the offense. Defendant objected on the grounds that the amendment altered

---

[1]We note that although the State cites to Section 30-9-11(E)(1) (2009), the crime with which Defendant was charged occurred on February 16, 2009, and the 2009 amendment to this version of the criminal code did not take effect until July 1, 2009. 2009 N.M. Laws, ch. 59 § 1. Therefore, the previous version of the code is applicable in this case. We note also, however, that CSPM II is defined identically in the 2007 and 2009 versions of the statute.

3

the charge against him so as to prejudice his substantial rights. The district court found no prejudice and allowed the State's amendment to conform to the evidence under Rules 5-204(A) and (C) NMRA. The jury found Defendant guilty of CSPM II, and this appeal timely followed.

**DISCUSSION**

**Amendment of the Criminal Information**

Defendant argues that the district court erred when it allowed the State to amend the information under Rules 5-204(A) and (C) because the amendment violated his right to due process. "We review a district court's interpretation and application of Rule 5-204 de novo." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602.

Under our Rules of Criminal Procedure, an information is required to contain "a written statement, signed by the district attorney, containing the essential facts, common name of the offense and, if applicable, a specific section number of the New Mexico Statutes which defines the offense." Rule 5-201(C) NMRA; *State v. Foster*, 87 N.M. 155, 157, 530 P.2d 949, 951 (Ct. App. 1974) (stating that an information must allege sufficient facts to give the defendant notice of the crime charged). Rules 5-204(A) and (C) permit amendment of an information to correct a deficiency in the

charging document or to conform the charge to the evidence presented. Specifically, Rule 5-204(A) provides that

> [t]he court may at any time prior to a verdict cause the . . . information to be amended in respect to any . . . defect, error, omission or repugnancy if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

Further, where there is a variance between the charging document and the evidence presented, Rule 5-204(C) provides that

> [n]o variance between those allegations of a[n] . . . information . . . whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the . . . information to be amended in respect to any variance to conform to the evidence.

These rules protect a defendant's right to due process since they ensure that "[e]very accused has the right to be informed of the crime with which he is charged in sufficient detail to enable him to prepare his defense." *Foster*, 87 N.M. at 157, 530 P.2d at 951. Accordingly, this Court has reversed a defendant's conviction where the district court permitted the information to be amended to include an entirely new offense at the close of evidence because this amendment deprived the defendant of notice of the charge against which he had no opportunity to defend. *State v. Roman*, 1998-NMCA-132, ¶¶ 13-14, 125 N.M. 688, 964 P.2d 852.

In this case, Defendant argues that he was prejudiced because the State's amendment to the information added the elements of "force and coercion" to the charge against him so that he could not have reasonably anticipated the nature of the proof he would have to defend against at trial. A review of the original criminal information shows that Defendant's claim is unfounded. As Defendant recognizes, the purpose of a criminal information

> is to furnish the accused with such a description of the charge against him as will enable him to make a defense and to make his conviction or acquittal res judicata against a subsequent prosecution for the same offense, and to give the court reasonable information as to the nature and character of the crime charged.

*State v. Myers*, 2009-NMSC-016, ¶ 43, 146 N.M. 128, 207 P.3d 1105. The original information in this case served that purpose.

The original criminal information referred to the specific statutory section under which Defendant was charged and alleged the specific date on which his criminal conduct occurred. Section 30-9-11(E)(1) was the statute in effect on February 16, 2009, and described the statutory elements of CSPM II, including the use of "force or coercion." Because the information included the date of the crime and the statute Defendant was charged with violating, the information provided Defendant with notice as to the applicable definition of CSPM II and the elements he would have to defend against at trial. *See State v. Vigil*, 85 N.M. 328, 329-30, 512 P.2d 88, 89-90

6

(Ct. App. 1973) (holding that an information charging the defendant with statutory rape was sufficient where it gave the common name of the crime and statutory section number). The original information also satisfied Rule 5-201(C)'s requirements of providing the common name of the crime and setting out the essential facts: the information stated that Defendant was charged with CSP II and included a parenthetical indicating that charge of second degree CSP II was based on the age of the victim and provided the factual basis of the sole charge—that Defendant inserted his finger or fingers into Victim's vagina on or about February 16, 2009. *Cf. Foster*, 87 N.M. at 157-58, 530 P.2d at 951-52 (reversing a defendant's conviction where the information was insufficient because it failed to charge a specific act or acts, and therefore the Court found that the defendant's due process rights were violated because he could not know which act he had to defend against).

Despite the fact that the information here was sufficient to give Defendant notice of the crime with which he was charged, Defendant contends that the amendment to the information prejudiced him because the original information also alleged that he used his position of authority to coerce Victim to submit to the sexual act and that this language indicated that he was charged under a repealed statute with different elements than those set out in Section 30-9-11(E)(1). We disagree. We recognize that prior to 2007, one definition of CSPM II was CSP perpetrated "on a

child thirteen to eighteen years of age when the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit." NMSA 1978, § 30-9-11(D)(1) (2003) (amended 2009). However, this definition was codified at Section 30-9-11(D)(1) (2003), and had been repealed for nearly two years at the time Defendant was charged. 2007 N.M. Laws, ch. 69 § 1. Although the prior language reflected the statutory elements of Section 30-9-11(D)(1), this was no longer the case at the time Defendant was charged. *See* § 30-9-11(E)(1) (2007). Consequently, under the statutory definition of CSPM II cited in the information, the language regarding Defendant's position of authority was not an element of the crime, but an unnecessary allegation that may be disregarded as surplusage. *See* Rule 5-204(B) NMRA ("Any unnecessary allegation contained in a[n] . . . information . . . may be disregarded as surplusage."); *State v. Lucero*, 79 N.M. 131, 132, 440 P.2d 806, 807 (Ct. App. 1968).

Because the original information was sufficient to provide Defendant with notice of the elements of the crime against which he would have to defend, and the amended information did not add any elements to the crime or charge Defendant with an additional crime, it was not error to allow the State's amendment to the information to eliminate the surplusage and conform the information to the language of Section 30-9-11(E)(1). *See State v. Dietrich*, 2009-NMCA-031, ¶¶ 71-72, 145 N.M. 733, 204 P.3d 748 (holding that the defendant's substantial rights were not prejudiced where

an amended indictment confirmed the statutes and the evidence on which the state would base its case because the defendant was not charged with an additional or different offense and the defendant had notice of the statute under which he was charged).

**Motion for Directed Verdict**

Defendant asserts that the district court erred in denying his motion for directed verdict. When reviewing the denial of a directed verdict, we must determine whether there was sufficient evidence presented to support the underlying charge. *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198.

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Johnson*, 2010-NMSC-016, ¶ 57 , 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted).

Defendant contends that there was insufficient evidence of force to support the CSPM II charge. This Court has recognized that when determining whether force was used in the commission of a criminal sexual penetration or criminal sexual contact, the

9

issue is not the amount of force used, but whether the quality of the defendant's actions constituted force. *State v. Perea*, 2008-NMCA-147, ¶ 12, 145 N.M. 123, 194 P.3d 738; *State v. Huff*, 1998-NMCA-075, ¶ 12, 125 N.M. 254, 960 P.2d 342. In *Perea*, the defendant's physical acts of unbuttoning and taking off the victim's pants, pushing her legs apart to penetrate her, and continuing to penetrate her after she told him that it hurt and asked him to stop, were all physical acts constituting sufficient force to sustain the defendant's conviction for criminal sexual penetration through the use of force. 2008-NMCA-147, ¶ 12. In *Huff*, the victim's testimony that the defendant grabbed her breasts and squeezed them and that this act caused her pain and discomfort provided sufficient evidence that the defendant used physical force in the commission of criminal sexual contact. 1998-NMCA-075, ¶ 11.

Consistent with *Perea* and *Huff*, "force" in this case was defined by statute as "the use of physical force or physical violence." *See* NMSA 1978, § 30-9-10(A)(1) (2005); *Perea*, 2008-NMCA-147, ¶ 12; *Huff*, 1998-NMCA-075, ¶ 9; *see also State v. Coleman*, 2011-NMCA-087, ¶ 19, 150 N.M. 622, 264 P.3d 523 ("We analyze the evidence in light of the jury instructions submitted at trial."), *cert. denied*, 2011-NMCERT-008, ___ N.M. ___, 268 P.3d 513. For the reasons that follow, we conclude that there was sufficient evidence that Defendant used physical force while committing the act of criminal sexual penetration. Victim testified that Defendant put

his hand underneath her underwear and rubbed the skin of her vagina roughly, that his touch was hard and it hurt a lot, and that it hurt when he put his finger into her vagina. Additionally, the nurse testified about the injuries to Victim's vaginal area and showed the jury the location of each injury using forms depicting female genitalia identical to the forms she used to document the injuries during her examination of Victim. There was a star-like pattern of tearing on the bottom of Victim's vaginal opening (posterior fourchette), and the nurse explained that this type of tearing occurs when force is applied to the tissue and the tissue tears outwards in a star-like pattern. Victim's posterior fourchette was also acutely red, tender, and had been hurting constantly since the time of the incident. There were two deep v-shaped notches on Victim's hymen which were actively oozing blood and indicated a more recent injury. Victim's clitoral hood was red, swollen, and tender to the touch, as were her labia majora and inner labia minora. There was tearing of the tissue of both the labia majora and inner labia minora. The nurse testified that what Victim described Defendant had done could have caused her injuries, and that at no time during Victim's disclosure did she indicate any other type of contact.

The question of whether Defendant used physical force against Victim to support the charge of CSPM II was an issue to be determined by the jury. *See State v. Lucero*, 118 N.M. 696, 699, 884 P.2d 1175, 1178 (Ct. App. 1994) ("The question

11

of whether [the d]efendant's acts which caused [the victim] to perform fellatio [were] accompanied by sufficient force to constitute CSP[] was an issue to be determined by the jury."); *Sena*, 2008-NMSC-053, ¶ 11 (stating it is the exclusive province of the jury to resolve any factual inconsistencies in a witness's testimony). We determine that there was sufficient evidence that Defendant used physical force against Victim in the course of penetrating her so that any rational fact finder could have found the State established this element of CSPM II beyond a reasonable doubt; therefore, the district court did not err in denying Defendant's motion for directed verdict. *See Perea*, 2008-NMCA-147, ¶ 12; *Johnson*, 2010-NMSC-016, ¶ 57.

**Evidentiary Ruling on Tara Renold's Affidavit**

Defendant also argues that the district court abused its discretion when it excluded an affidavit signed by Tara Renolds (Renolds), Victim's mother, which stated that Renolds did not want the case prosecuted and that Victim told her the incident never happened. "Generally speaking, a reviewing court defers to the trial court's decision to admit or exclude evidence and will not reverse unless there has been an abuse of discretion. However, our review of the application of the law to the facts is conducted de novo." *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232; *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). We

conclude the district court did not abuse its discretion when it excluded Renold's affidavit.

The issue of whether the district court would admit the affidavit arose during defense counsel's cross examination of Renolds. Defense counsel asked Renolds whether it was true that she had previously indicated that she did not want the prosecution to proceed. The State objected on relevance grounds, and the jury was excused while defense counsel offered a tender and questioned Renolds about the affidavit. Defense counsel then sought to admit the affidavit, asserting that it went to the Renolds' credibility. The State agreed that defense counsel could question Renolds about her prior statements but objected to the admission of the affidavit itself. The district court allowed defense counsel to question the witness about the contents of the affidavit but excluded the document itself under Rule 11-403 NMRA finding that it was more prejudicial than probative.

Defense counsel then questioned Renolds in front of the jury about whether she had previously communicated that she did not want the case to proceed. Renolds acknowledged that she had signed an affidavit in which she stated that Victim told her that the incident never occurred, that she wanted the case dismissed, and that she did not want Victim to commit perjury by testifying. Renolds said that she signed the affidavit in front of a notary but did not think that she was under oath. Defense

counsel asked Renolds if she was saying that the information in the affidavit was not true, and Renolds responded that he was correct and that she signed the affidavit to spare her daughter from having to testify. Defense counsel then asked, "So you lied on that document?" Renolds answered, "Yes, I did."

Defendant contends that the district court erred in excluding the affidavit because it was relevant to the Renolds' credibility and because it denied him the opportunity to test her truthfulness. Rule 11-608(B)(1) NMRA explicitly precludes the admission of extrinsic evidence to prove a specific instance of a witness's conduct for the purpose of attacking or supporting the witness's character for truthfulness. Accordingly, to the extent Defendant asserts that he offered the affidavit to place Renolds' credibility before the jury by allowing the jury to see the seal of the notary to show that Renolds had lied under oath on that occasion, the affidavit was inadmissible under Rule 11-608(B)(1). *See also* Rule 11-404(A)(3) NMRA (governing the admission of evidence of the character of a witness as provided by Rules 11-607, 11-608, and 11-609 NMRA); *State v. Casillas*, 2009-NMCA-034, ¶¶ 43-44, 145 N.M. 783, 205 P.3d 830 ("Under Rule 11-607, any party may attack a witness's credibility."). As a general rule, we will uphold the decision of a district court if it is right for any reason, *State v. Ruiz,* 2007-NMCA-014, ¶ 38, 141 N.M. 53,

14

150 P.3d 1003; therefore, we affirm the district court's exclusion of the affidavit here as it was proper under Rule 11-608(B).

Further, the exclusion of the affidavit did not prevent Defendant from testing Renolds' credibility or questioning her about whether she lied on a particular occasion. Rule 11-608(B)(1) gives the district court discretion to allow a party to inquire into a specific instance of a witness's conduct on cross-examination if the instance is probative of the witness's character for truthfulness or untruthfulness. The record reveals that the district court gave Defendant great latitude in cross-examining Renolds regarding the entire contents of the affidavit, whether the statements in it were true, whether she lied under oath when she signed the affidavit, and her motive for writing and signing the affidavit. *See State v. Sanchez*, 103 N.M. 25, 27, 702 P.2d 345, 347 (1985) (recognizing that defendants in criminal cases have a vital right to confront the witnesses against them and are "generally permitted great latitude in cross-examining prosecution witnesses").

On appeal, Defendant contends, for the first time, that the district court's exclusion of the affidavit violated his constitutional right to confront Renolds. We note that this issue was not preserved below, and Defendant does not argue that we should review the exclusion of the affidavit for fundamental error. *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (stating that, on appeal, the

reviewing court will not consider issues not raised in the district court unless the issues involve matters of jurisdictional or fundamental error). Indeed, defense counsel was permitted to thoroughly cross-examine Renolds on the entire contents of her affidavit. He does not argue that fundamental error occurred under these circumstances, nor does he demonstrate that the exclusion of the affidavit resulted in the miscarriage of justice, a conviction that shocks the conscience, or the denial of substantial justice. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705.

**Jury Instructions**

**A.     "Force or Coercion"**

Defendant contends that the district court erred when it refused Defendant's proposed instruction defining "force or coercion" and failed to instruct the jury on that element of CSPM II. We review the propriety of jury instructions de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "Because Defendant preserved the issue by offering an alternate instruction, we review Defendant's claims for reversible error." *State v. Dowling*, 2011-NMSC-016, ¶ 14, 150 N.M. 110, 257 P.3d 930.

> Reversible error arises if a reasonable juror would have been confused or misdirected. A juror may suffer from confusion or misdirection despite the fact that the juror considers the instruction straightforward and perfectly comprehensible on its face. Thus, juror confusion or

16

misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law.

*Cabezuela*, 2011-NMSC-041, ¶ 22 (alteration, internal quotation marks, and citations omitted). "A jury instruction [that] does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *Dowling*, 2011-NMSC-016, ¶ 14.

In this case, the district court instructed the jury that in order to find Defendant guilty of CSPM II by force or coercion, the State was required to prove that

1. [D]efendant caused the insertion, to any extent, of a finger into the vagina of [Victim];
2. [Victim] was at least 13 but less than 18 years old;
3. [D]efendant used physical force or physical violence against [Victim];
4. This happened in New Mexico on or about the 16th day of February, 2009.

The jury was also given step-down instructions for third degree and fourth degree CSPM.

The district court refused Defendant's requested instruction that stated that Defendant used "force or coercion" on Victim and also refused Defendant's separate instruction defining "force or coercion":

(1) The use of physical force or physical violence;

17

(2)    The use of threats or use of physical violence or physical force against the victim or another when the victim believes that there is a present ability to execute the threats;

(3)    The use of threats, including threats of physical punishment, kidnapping, extortion or retaliation directed against the victim or another when the victim believes that there is an ability to execute the threats;

(4)    The perpetration of [CSP] or [CSC] when the perpetrator knows or has reason to know that the victim is unconscious, asleep or otherwise physically helpless or suffers from a mental condition that renders the victim incapable of understanding the nature or consequences of the act; or

(5)    The perpetration of [CSP] or [CSC] by a psychotherapist on his patient, with or without the patient's consent, during the course of psychotherapy.

Section 30-9-10(A). The district court refused these instructions because it found that providing the jury with all of the statutory definitions of force or coercion might lead to juror confusion.

On appeal, Defendant appears to argue that it was error to refuse the instruction because without providing all five of the statutory definitions, the jury may have been confused as to the meaning of force and coercion. We disagree and conclude there was no instructional error because the instruction given to the jury set out all of the essential elements of the crime that Section 30-9-11(E)(1) required the State to prove: that Defendant committed CSP on Victim by inserting his finger or fingers to any extent into her vagina, that he used force against her, that Victim was between the ages of thirteen and eighteen, and that the crime occurred in New Mexico on or about February 16, 2009. *See* § 30-9-11(E)(1); *Cabezuela*, 2011-NMSC-041, ¶¶ 38-39

("The language of a statute determines the essential elements of the offense" and "[i]t is the fundamental right of the criminal defendant to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt." (internal quotation marks and citations omitted)). The instruction also gave a statutory definition of the element of "force" describing it as "physical force or physical violence." *See* § 30-9-10(A)(1) "Physical force or physical violence" was one of the statutory definitions proposed by Defendant, and the State offered it because it was the only one of the five definitions that matched the theory of the State's case and the evidence presented trial.

Though "physical force or physical violence" was not further defined in the instruction here, the district court's failure to instruct on the definition of an element of a crime does not constitute error. *See Lucero*, 118 N.M. at 700-01, 884 P.2d at 1179-80. When a word or term has a common meaning, "there is no error in refusing an instruction defining the word or term." *State v. Munoz*, 2006-NMSC-005, ¶ 24, 139 N.M. 106, 129 P.3d 142. Here, we conclude that "physical force and physical violence" have commonly understood meanings, no additional definition was required, and the jury instructions articulated an accurate statement of the law. *See State v. Mascareñas*, 2000-NMSC-017, ¶ 19, 129 N.M. 230, 4 P.3d 1221 (stating that failure to give a definitional instruction on a term is not failure to instruct on an

19

essential element of a crime). Even assuming, arguendo, that a juror may find the terms ambiguous, we fail to see how providing the other four statutory definitions would lessen any potential juror confusion. There was no evidence presented that related to Defendant's definitions 2, 3, and 5. To the extent the fourth definition may have applied, Defendant requested the district court to instruct on all five together and did not offer this as a separate instruction. Accordingly, the district court properly instructed the jury on all of the elements of CSPM II that were consistent with the evidence presented at trial; therefore, we hold there was no instructional error. *Compare Mascareñas,* 2000-NMSC-017, ¶¶ 19-21, (holding that failure to instruct the jury on the requisite *mens rea* under the law of that case amounted to failing to instruct on all the essential elements of the crime and rose to fundamental error) *with Munoz*, 2006-NMSC-005, ¶¶ 24-25 (holding that *Mascareñas* did not apply where the district court provided instruction on all the elements of a crime, but refused to give an instruction on a term it concluded had a commonly understood meaning).

**B.     The District Court Instructed the Jury on Lesser Included Offenses**

Finally, to the extent Defendant argues that the district court erred when it refused to instruct the jury on CSP IV as a lesser included offense, we disagree. The district court instructed the jury that if it had reasonable doubt as to Defendant's guilt of CSP II or CSP III, it must proceed to determine whether Defendant committed the

included offense of CSP IV, and the court provided an instruction on the elements of the crime. *See* § 30-9-11(G)(1).

**CONCLUSION**

We conclude that (1) the criminal information was sufficient in this case, and the district court did not err in allowing the State to amend it to conform to the language to the statute under which Defendant was originally charged and the evidence presented; (2) the district court properly denied Defendant's motion for directed verdict; (3) the district court did not abuse its discretion in excluding the affidavit from evidence; and (4) the jury was properly instructed. We affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**



_____
**CYNTHIA A. FRY, Judge**

21