2001-NMCA-094

34 P.3d 139

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Stanley Bryant HILL, Defendant–Appellant.**

No. 21,347.

Court of Appeals of New Mexico.

Oct. 4, 2001.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Plaintiff–Appellee.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Assistant Appellate Defender, Santa Fe, NM, for Defendant–Appellant.

## OPINION

FRY, Judge.

{1} Defendant appeals his convictions for battery on a peace officer and improper display of registration plate. He argues that the district court erred in failing to instruct the jury on: self-defense; the lawfulness of the police officer's actions; resisting, obstructing, or evading a police officer as a lesser included crime of battery on a peace officer; and entrapment. Defendant further argues that the evidence was insufficient to support his conviction for improper display of a registration plate. We hold that the district court should have instructed the jury on self-defense and reverse Defendant's conviction for battery on a peace officer. We further hold that there was sufficient evidence to support Defendant's conviction for improper display of a registration plate. We remand for a new trial in accordance with this opinion. Although we need not resolve De-

fendant's other claims of error, we briefly discuss them.

## FACTS

{2} On the night in question, Defendant was visiting his girlfriend at the gas station where she worked. Officers Briseno and Fowler also happened to be at the gas station, and they left the station at about the same time Defendant drove off in his mother's truck. Because the truck's trailer hitch was obstructing the registration sticker on the truck's license plate, the officers pulled Defendant over. Defendant immediately jumped out of the truck and began yelling at the officers. The officers told Defendant to get back in his truck, and he complied. Officer Fowler then asked for Defendant's license and registration, and after checking for warrants, she returned the documents to Defendant. She told Defendant she was not going to cite him but that he should remove the trailer hitch from the truck so that the registration sticker could be seen. Defendant said he was going to report the officers to the chief of police if they continued to harass him. Officer Briseno then asked for Defendant's license and registration again so that he could issue a citation, whereupon Defendant said, "[y]ou guys can see me at my house." The truck began to move forward, and Officer Briseno ran along beside it.

{3} At this point the participants' accounts of the encounter diverge. Defendant testified that the truck's movement was a surprise to him. He said that just before the truck began to move, Officer Briseno, without provocation, struck Defendant's arm with something. Without realizing the truck was in gear, Defendant somehow pressed the throttle with his foot and was surprised when the truck lurched forward. Officer Briseno, hanging onto the truck as it moved forward, struck Defendant in the throat and dug his nails into Defendant's shoulder. According to Defendant, Officer Briseno drew his firearm and Defendant saw him try to pull the trigger twice. Fearing for his life, Defendant testified that he began to kick at Officer Briseno.

{4} By contrast, Officer Briseno testified that when Defendant threatened to complain to the chief of police, he decided to issue a

citation in order to document the incident. He asked for Defendant's license again, whereupon Defendant forcefully hit the truck's dashboard with his hand and began to drive away. Officer Briseno reached into the truck, grabbed Defendant's arm, and tried to turn off the ignition key. He testified that Defendant began punching him with his fist, and the truck stalled. Officer Briseno, who did not relish hanging on the side of the truck if Defendant took off at high speed, drew his firearm and ordered Defendant not to start the truck. When Defendant ignored him and attempted to start the truck, Officer Briseno re-holstered his weapon in order to have the use of both hands and tried again to turn off the ignition. Defendant started the truck, leaned over onto the passenger seat and began kicking Officer Briseno with both feet. With the assistance of other officers, Defendant was taken into custody and arrested.

## DISCUSSION

### I. Jury Instruction on Self Defense

{5} Whether the district court properly refused Defendant's tendered jury instruction is a mixed question of law and fact that we review de novo. *State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. We view the evidence in the light most favorable to the giving of the requested instruction. *State v. Vallejos*, 1996–NMCA–086, ¶ 28, 122 N.M. 318, 924 P.2d 727, *aff'd in part and rev'd in part on other grounds*, 1997–NMSC–040, 123 N.M. 739, 945 P.2d 957.

### A. Preservation

{6} The State argues that Defendant did not properly preserve this issue for review because his tendered instruction constituted an incorrect statement of the law. Defendant submitted UJI 14–5181, NMRA 2001, "Self-defense; nondeadly force by defendant" with slight, non-substantive variations. The State argues that the instruction proposed to give Defendant an unlimited right of self-defense, while *State v. Kraul*, 90 N.M. 314, 319, 563 P.2d 108, 113 (Ct.App. 1977), limits the right of a person to defend himself against a peace officer. "One may defend oneself against excessive use of force

by the officer. One does not have the right to self-defense when the officer is using necessary force to effect an arrest." *Id.* Because Defendant did not tender a correct written instruction, the State argues Defendant did not properly preserve this issue. *See* Rule 5–608(D) NMRA 2001; *State v. Garcia,* 100 N.M. 120, 125, 666 P.2d 1267, 1272 (Ct.App.1983) ("To preserve error on the refusal of the trial court to give a proffered instruction, the defendant must tender a legally correct statement of law.").

{7} We disagree. The State overlooks the purpose of the rule requiring the tender of a correct instruction, which is to alert the trial court to the defendant's argument. *See Gallegos v. State,* 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992). In this case, the court clearly understood the type of instruction Defendant wanted and understood that the instruction should be modified to correctly state the law. Judge Birdsall and the attorneys had an extensive discussion about the self-defense issue. The Judge stated that if the jury believed Defendant,

> [t]he jury could have concluded that [Defendant] acted out of fear of immediate death or great bodily harm. Not only did the officer violently grab the defendant, but he also drew his gun and pointed it at [Defendant], who was not engaging in threatening behavior. The evidence could have led the jury to conclude that the officers used excessive force against [Defendant] and that [Defendant] kicked out with his feet merely in an attempt to block the officer from further harming him, not in an attempt to commit a battery.... My concern is there's been testimony. I mean there is some evidence out there.

The State responded, "Right, judge. I agree with you that the evidence is out there." This discussion establishes that the district court was sufficiently alerted to this issue. *See State v. Diaz,* 121 N.M. 28, 33, 908 P.2d 258, 263 (Ct.App.1995) ("[A]n instruction issue had been properly preserved by tender of a uniform jury instruction although the specifically tendered instruction was incorrect."). Having determined that Defendant sufficiently preserved his argument that he

was entitled to a self-defense instruction, we now address the merits of the issue.

## B. Entitlement to Self Defense Jury Instruction

{8} "An instruction on a claim of self defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim." *State v. Lucero,* 1998–NMSC–044, ¶ 6, 126 N.M. 552, 972 P.2d 1143 (internal quotation marks and citation omitted). A person has a right to self-defense against a police officer when excessive force is used to effect an arrest. *State v. Gonzales,* 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct.App.1982). "One does not have the right to self-defense when the officer is using necessary force to effect an arrest." *Kraul,* 90 N.M. at 319, 563 P.2d at 113. When there are questions as to whether excessive force has been used by a peace officer, "it devolves upon the jury, under the evidence in the case and proper instructions of the court, to resolve these questions." *Gonzales,* 97 N.M. at 610, 642 P.2d at 213 (internal quotation marks and citation omitted).

{9} It was this question of excessive force that posed difficulty for the trial court. In rejecting Defendant's proposed self-defense instruction, the court stated:

> Here's what I'm going to do and I'm not sure for the record which way is right. I'm going to refuse the self-defense instruction. The reason I'm going to do that is that the testimony of the defendant to me does not reach the level-and I'm kind of splitting the baby here-of what we have read, excerpts from *State v. Kraul* and *State v. Brown.* ... However, I do think the defendant is entitled to-I'm going to permit him to make the argument about performing duties of a peace officer as an opposition to the elements offense.

It is apparent from these comments that the judge was concerned that the evidence did not conform to the common law limitations of one's right to defend oneself against a peace officer.

{10} The State argues that Defendant was not entitled to a self-defense instruction because Defendant's use of force

incited Officer Briseno's use of force. *See Vallejos*, 1997–NMSC–040, ¶ 40, 123 N.M. 739, 945 P.2d 957. We are not persuaded. Unless reasonable minds could not differ, the question of whether Defendant was the instigator or the victim should be left to the jury. *See* UJI 14–5191 NMRA 2001 (instructing jury on determining whether defendant was aggressor). If members of the jury believed Defendant's version of events, it would be reasonable for them to conclude that he acted in self-defense. Defendant testified that Officer Briseno physically attacked him without provocation, and Officer Briseno admitted that he grabbed Defendant. Officer Briseno also admitted that he pointed his weapon at Defendant. Defendant testified that his attacks on Officer Briseno occurred solely in reaction to actions which he perceived to be life threatening.

{11} There was sufficient evidence of self-defense that the district judge should have instructed the jury on Defendant's theory, incorporating the limitations applicable to self-defense against a police officer. His failure to do so is reversible error. *See State v. Trammel*, 100 N.M. 479, 481, 672 P.2d 652, 654 (1983) ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error.").

{12} Although we reverse based on Defendant's first argument, his remaining arguments are likely to arise again on remand. Therefore, we address each of these arguments in turn in the interest of judicial efficiency. *See State v. Jason F.*, 1998–NMSC–010, ¶ 22, 125 N.M. 111, 957 P.2d 1145.

## II. Jury Instruction on Lawfulness of Police Officer's Actions

{13} Defendant argues that he was entitled to a jury instruction on the lawfulness of the police officers' actions. The State contends that this argument was not preserved. We agree.

{14} On appeal, Defendant theorizes that he was not guilty of battery on a peace officer because Officer Briseno was not "[performing] the duties of a peace officer" as those terms are used in the instruction defin-

ing peace officer battery. *See* UJI 14–2211, n. 5 (1998) ("If there is an issue as to whether the officer was within the lawful discharge of the officer's duties, an instruction may need to be drafted."). Defendant claims he tendered two jury instructions consistent with his defense which explained an officer's lawful discharge of duties. However, our review of the record establishes that the tendered instructions related to Defendant's claim of entrapment, not to a definition of lawful police action in the context of battery on a peace officer. Both proffered instructions cited *Vallejos*, 1997–NMSC–040, 123 N.M. 739, 945 P.2d 957, UJI 14–5160 NMRA 2001, and UJI 14–5161 NMRA 2001. The cited authorities relate to entrapment theory. Moreover, Defendant made no argument to the trial court that there should be an instruction explaining a police officer's duties. As a result, Defendant cannot premise error on an argument he failed to make below. *State v. Noble*, 90 N.M. 360, 365, 563 P.2d 1153, 1158 (1977) ("Objections to instructions cannot be raised for the first time on appeal where defendant neither objected to the instructions at trial nor tendered any written request.").

{15} Presumably, at retrial Defendant will tender an instruction on lawful discharge. We leave it to the trial court to determine at that time whether the instruction is appropriate and supported by the evidence.

## III. Jury Instruction on Lesser Included Offense of Resisting, Obstructing, or Evading Police Officer

{16} Defendant argues that he was entitled to a jury instruction on resisting, obstructing, or evading a police officer as a lesser included offense of battery on a peace officer. We do not agree. If the evidence adduced at retrial is similar to that presented at the first trial, then a separate instruction on resisting, obstructing, or evading would not be warranted.

A failure to instruct the jury on a lesser included offense [is] reversible error if: (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that

the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue.

*Diaz*, 121 N.M. at 30, 908 P.2d at 260 (Ct. App.1995) (citations omitted). We discuss each of these requirements in turn.

{17} With respect to the first requirement, we have previously held that "a defendant cannot commit peace officer battery without having also resisted or abused an officer." *Id.* at 31, 908 P.2d at 261; *see also State v. Padilla*, 101 N.M. 78, 80, 678 P.2d 706, 708 (Ct.App.1983) (holding that resisting an officer is a lesser included offense of peace officer battery; the only difference between the two is that peace officer battery requires the resisting or abusing to culminate in a touching, while resisting does not), *aff'd in part and rev'd in part on other grounds*, 101 N.M. 58, 678 P.2d 686 (1984). We therefore move on to the second requirement and consider whether "there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable doubt that Defendant committed the lesser included offense while still harboring a reasonable doubt that Defendant committed the charged offense." *State v. White*, 1997–NMCA–059, ¶ 14, 123 N.M. 510, 943 P.2d 544. We conclude that there is no such view of the evidence.

{18} The elements of peace officer battery are "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." NMSA 1978, § 30–22–24(A) (1971). The elements of resisting, evading or obstructing a peace officer are "resisting or abusing any ... peace officer in the lawful discharge of his duties." NMSA 1978, § 30–22–1(D) (1981). Here, Defendant admitted that he struck and kicked Officer Briseno—actions which constitute intentional touching and which are therefore consistent with peace officer battery. Even if the jury rejected the officers' versions of the encounter and believed Defendant's testimony, Defendant's actions culminated in "intentional 'touching or application of force in a rude, insolent, or angry manner' " which eliminates resisting, evading or obstructing as the high-

est degree of offense committed. *Padilla*, 101 N.M. at 80, 678 P.2d at 708 (explaining that peace officer battery culminates in touching while resisting does not).

{19} Defendant argues that the jury could have found that his actions were not *intentional* touching, and therefore that he was guilty of nothing more than resisting, evading, or obstructing. And yet Defendant's testimony was that he had the intent to kick Officer Briseno in order to avoid being shot. *See State v. Gallegos*, 2001–NMCA–021, ¶¶ 8–9, 130 N.M. 221, 22 P.3d 689 (indicating that actions performed in self-defense are intentional). He testified that he did not begin to kick Officer Briseno until he saw Officer Briseno attempting to pull the trigger of his gun. Defendant testified that kicking "was the only thing I could do to even remotely come out halfway hoping to be alive." He went on to say that he kicked Officer Briseno "[j]ust to keep him away from me because this officer was trying to hurt me, not restrain me." Given this testimony, there were only two possible views of the evidence: (1) Defendant was guilty of peace officer battery because he intentionally touched the officer in an angry manner, or (2) Defendant was not guilty because he intentionally and justifiably kicked the officer in self-defense. In either case there was no set of facts under which the jury could have convicted Defendant of only resisting, evading, or obstructing as that offense is defined by law.

### IV. Jury Instruction on Entrapment

{20} Defendant claims he was the victim of objective entrapment, and therefore, the district court should have dismissed the charges against him or at least instructed the jury on entrapment theory. He argues that the police department's repeated harassment of him, combined with the officers' issuing a ticket for no legitimate reason, either caused him to commit peace officer battery or constituted outrageous police conduct. We conclude that the court properly refused these instructions.

{21} Our Supreme Court articulated two types of objective entrapment in *Vallejos*, 1997–NMSC–040, ¶ 2, 123 N.M. 739,

945 P.2d 957, both of which involve matters of due process. The first type occurs when "police conduct create[s] a substantial risk that an ordinary person would [be] caused to commit the crime[,]" which we will call "factual objective entrapment." *Id.* The second type occurs when "police conduct exceed[s] the standards of proper investigation[,]" which we will term "normative objective entrapment." *Id.*

{22} Defendant requested instructions on each form of entrapment. As to each form, Defendant argued, both at trial and on appeal, that the objectionable police conduct consisted of the officers (1) stopping Defendant in the continuation of an alleged pattern of harassment and (2) giving Defendant a citation solely in order to punish him for threatening to complain to the police chief. Defendant did not argue that any other police conduct, such as Officer Briseno's alleged assault on Defendant, constituted the basis for the entrapment defense. Defendant's requested jury instruction patterned on UJI 14–5161 alleged the police exceeded permissible conduct because they had "no legal grounds to stop the defendant, and decided to charge him with a crime only after he exercised his First Amendment right to free speech about reporting the behavior of the officer(s) to a superior." We therefore analyze the propriety of entrapment instructions in the context of this theory.

{23} The evidence does not support an instruction on factual objective entrapment. There are two reasons that no reasonable jury could have found that the officers in this case created a substantial risk that an ordinary person would have been caused to commit the crime of peace officer battery.

{24} First, the officers had a legitimate reason to pull Defendant over. Defendant acknowledged that the officers pulled him over because the truck's trailer hitch was obstructing the license plate's registration sticker. Defendant's objection to the stop was that it was the latest in a series of police stops. The truck he was driving was registered in his mother's name, and his sister, who had an outstanding warrant, had a similar name. However, there was no evidence that the same officers had stopped him on any of the prior occasions or that they even knew about the prior stops. Thus, there is no reasonable inference that the officers knowingly participated in a pattern of harassing Defendant.

{25} Second, the officers issued the citation for a purportedly legitimate reason-obstruction of the registration sticker. Defendant contends their only motivation for converting a warning to a citation was Defendant's threat to complain to their superior. Even if this were true, no ordinary person would be caused to commit peace officer battery as a result. People regularly challenge traffic citations without resorting to violence.

{26} The question of normative objective entrapment is an issue of law which we review do novo. *Vallejos,* 1997–NMSC–040, ¶ 39, 123 N.M. 739, 945 P.2d 957. Because there is no dispute about the circumstances of the stop and resulting citation, we decide whether the police conduct was unacceptable as a matter of law. *See* UJI 14–5161, Committee Commentary ("Ordinarily, the judge decides the issue of whether the alleged conduct, if it occurred, was acceptable as a matter of law, leaving for the jury the issue of whether this misconduct did occur."). Again, there is no factual support for a determination that the officers' actions in stopping and citing Defendant exceeded the bounds of proper investigation. The officers' conduct does not "offend[ ] our notions of fundamental fairness," so as to warrant dismissal. *Vallejos,* 1997–NMSC–040, ¶ 8, 123 N.M. 739, 945 P.2d 957 (internal quotation marks and citation omitted). As the court noted in *Vallejos,* "the defense [of objective entrapment] should be used sparingly and reserved for only the most egregious circumstances." *Id.* ¶ 22, 924 P.2d 727 (internal quotation marks and citation omitted). Here, the officers legitimately stopped Defendant and articulated a plausible reason for citing him, actions which by no means constitute "egregious circumstances."

## V. Sufficiency of Evidence to Support Conviction of Improper Display of a Registration Plate

{27} We review the sufficiency of the evidence used to support a conviction to deter-

mine whether "a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction" *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (emphasis in original; internal quotation marks and citation omitted). We "resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.*

{28} Defendant argues that there was insufficient evidence to support Defendant's conviction for improper display of a registration plate. He argues that to be in violation of NMSA 1978, § 66–3–18 (1998), the plate itself must be obscured, not merely the registration sticker.

{29} Section 66–3–18(A) requires "[t]he registration plate [to] be attached to the rear of the vehicle for which it is issued[.] . . . It shall be in a place and position so as to be clearly visible, and it shall be maintained free from foreign material and in a condition to be clearly legible." Although this statute refers specifically to a registration plate, it is clear from reading the other registration statutes that "registration plate" is a broad term comprising everything that evidences registration, including plates, tabs, and renewal stickers. *See, e.g.*, NMSA 1978, § 66–3–17(A) (1995) (stating that "renewals of the registration plate . . . shall cause the [motor vehicle] division to issue a validating sticker"); § 66–3–18(C) (referring to a "registration plate, including tab or sticker"); NMSA 1978, § 66–3–19(A)(5) (1995) (providing for "the issuance of validating stickers . . . to signify the registration of the vehicle[ ]"). Thus, legibility and visibility of the registration plate would include legibility and visibility of any renewal sticker.

{30} There was sufficient evidence to support Defendant's conviction for improper display of the truck's registration plate. Both Officer Briseno and Officer Fowler testified that the renewal sticker was not visible because it was obscured by one of the truck's two trailer hitches. Defendant himself admitted that the hitch, located about an inch from the plate's surface, obstructed part of the plate from some angles. In addition, when Officer Fowler told Defendant he should remove the hitch, Defendant said he had no intention of doing so. The jury could reasonably conclude that Defendant violated the registration laws.

## CONCLUSION

{31} Based on the above reasoning, we affirm Defendant's conviction for improper display of a registration plate. We reverse Defendant's conviction for battery on a peace officer and remand to the district court for a new trial with proper instructions to the jury on Defendant's theory of self-defense.

{32} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge and M. CHRISTINA ARMIJO, Judge.