This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38000**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GENOVEVA FAZIO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Defendant Genoveva Fazio appeals her convictions, following a jury trial, of child abuse, contrary to NMSA 1978, Section 30-6-1(D) (2009); false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963); and aggravated battery, contrary to NMSA 1978, Section 30-3-5(B) (1969). She maintains that insufficient evidence supports her conviction for child abuse, the prosecution engaged in misconduct, the district court erred by refusing her requested jury instructions, and her convictions offend her protection against double

jeopardy.[1] We conclude that insufficient evidence supports Defendant's conviction for child abuse and reverse that conviction. We affirm in all other respects.

**BACKGROUND**

**{2}**     Late at night, Defendant entered her home and, for reasons that are unclear from the record and that were disputed at trial, physically attacked her son, S.F. In the family room, Defendant bit S.F. on his arm, shoulder, and unclothed buttocks. Defendant then took S.F. to the bathroom, where she forced him into a cold shower.

**{3}**     Following the cold shower, Defendant brought S.F. clothes to wear. Defendant then brought S.F. a blanket and instructed him to wrap it around himself. She used bungee cords to make a rope and tied S.F. in the blanket, put him in a corner of the family room, and threatened to kill him if he left. Defendant then left the home. S.F. removed the rope and blanket, left the home, and went to a nearby Albuquerque Police Department (APD) substation. APD officers contacted emergency medical personnel who transported S.F. to an emergency room. APD officers unsuccessfully attempted to make contact with Defendant at her home.

**{4}**     Defendant absconded from the state to Arizona. A grand jury indicted Defendant for several crimes. At trial, Defendant claimed that her actions were the result of her witnessing S.F. sexually abusing J.F., S.F.'s younger brother, when she entered the family room. A jury convicted her of child abuse, false imprisonment, and aggravated battery. She appeals. We reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**I.     Sufficiency of the Evidence**

**A.     Standard of Review**

**{5}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Our task is to "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Although appellate courts are highly deferential to the jury's decisions, it is the

---

[1]Defendant also argues that the district court abused its discretion by denying her motion for a new trial. She appears to premise the argument on the doctrine of cumulative error, which is generally raised as a separate issue. In any event, Defendant's argument in this regard is limited to nothing more than conclusory statements. We decline to address it. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that this Court has no obligation to review underdeveloped arguments).

independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 (alteration, internal quotation marks, and citation omitted).

## B.    Insufficient Evidence Supports Defendant's Conviction for Child Abuse

**{6}**    In this case, the jury received instructions based on the State's narrow theory that Defendant committed child abuse by "forc[ing S.F.] into a cold shower," and that by doing so, "[D]efendant caused a substantial and unjustifiable risk of serious harm to the safety or health of [S.F.]." *See* UJI 14-612 NMRA. Defendant asserts that the State failed to satisfy this element because it did not present evidence regarding any risk posed by the cold shower to S.F.'s safety or health.[2] We agree.

**{7}**    Our Supreme Court has held that child abuse convictions cannot stand when the harm alleged by the state is purely speculative or otherwise insufficiently specific. *See, e.g.*, *State v. Chavez*, 2009-NMSC-035, ¶¶ 16, 22, 37, 39, 146 N.M. 434, 211 P.3d 891 (holding that the child abuse by endangerment statute contemplates punishment for "conduct that creates a truly significant risk of serious harm to children" rather than "minor or theoretical dangers"); *State v. Jensen*, 2006-NMSC-045, ¶¶ 13-14, 140 N.M. 416, 143 P.3d 178 (noting that merely arguing that a child could contract hantavirus because of "the presence of rodent droppings throughout [a] home" is insufficient to sustain a child abuse conviction in the absence of other evidence concerning the risk of contracting hantavirus). Such is the case here.

**{8}**    The sole evidence presented at trial to support this charge was testimony that Defendant forced S.F. into a shower with only cold water running.[3] In its closing argument, the State acknowledged that, on its face, a cold shower seems innocuous, but urged the jury to "think about the fact that this [occurred] in the middle of winter." The State made clear that its intention was to establish "more or less . . . a hypothermic situation." The State reiterates this argument on appeal. In our view, this argument is inadequate in the absence of evidence of harm suffered by S.F. as a result of the cold shower or of the risks posed to S.F.'s safety or health by the cold shower. *Cf. State v. Garcia*, 2014-NMCA-006, ¶ 14, 315 P.3d 331 (reversing a child abuse conviction because "the undeveloped factual circumstances" did not demonstrate a correlation between the defendant's actions and

---

2The State proceeded under the theory that Defendant "endangered the life or health of S.F.," contrary to Section 30-6-1(D)(1), or alternatively, "cause[d] S.F. . . . to be tortured, cruelly confined, or cruelly punished," contrary to Section 30-6-1(D)(2). Both alternatives include the element challenged by Defendant, *see* UJI 14-612, and the jury was instructed accordingly.

3We recognize that the State elicited testimony from S.F. that, while he was in the shower, Defendant caused him to hit his head against a wall and poured cleaning solution on his body. However, the language of the jury instruction on this charge and the State's briefing on this issue is limited solely to the act of placing Defendant in the shower with only cold water running. Moreover, the State represented to the district court that it intended the basis for the child abuse charge to be "only . . . the cold shower," and not Defendant's conduct during the shower. We limit our discussion accordingly.

the potential for the child to suffer harm); *State v. Webb*, 2013-NMCA-027, ¶¶ 3-4, 21, 296 P.3d 1247 (reversing a child abuse conviction where the defendant signed a release form for a tongue piercing for a minor who was not her child because the state failed to offer evidence of "the level of risk from post-piercing infection"). Indeed, our review of the record reveals *no evidence* from *any* witness, medical and law enforcement personnel included, of harm or the potential for harm from the cold shower. For these reasons, we reverse Defendant's conviction for child abuse.[4]

## II. Jury Instructions

## A. Standard of Review

**{9}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. Our inquiry centers on "whether a reasonable juror would have been confused or misdirected by the jury instruction[s]." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). We review unpreserved issues related to jury instructions for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

## B. The Jury Instructions Fairly Presented Defendant's Theory of the Case

**{10}** Defendant argues that the jury should have been instructed on parental privilege for all charges for which she was convicted. Specifically, Defendant contends that the district court should have provided the jury with a separate instruction defining parental privilege and embedded parental privilege as an element within these charges. Because we have concluded that insufficient evidence supports Defendant's child abuse conviction, we review the absence of instructions on parental privilege only as it relates to her convictions for false imprisonment and aggravated battery, and conclude that no fundamental error occurred.

**{11}** As support for her position that the jury should have been instructed on the defense of parental privilege, Defendant relies nearly exclusively on *State v. Lefevre*, 2005-NMCA-101, 138 N.M. 174, 117 P.3d 980, which considered the validity of a battery conviction in light of the defendant's position that his action was not unlawful as it fell under "a parental control justification insulating him from criminal liability." *Id.* ¶¶ 1, 11. In that case, this Court held that the action giving rise to the defendant's battery charge, i.e., "grabb[ing] and squeeze[ing]" his daughter's hand and leaving a small bruise, was "protected under the parental discipline privilege" because it was "an isolated instance of moderate or reasonable physical force . . . that result[ed] in nothing more than transient pain or temporary marks or bruises." *Id.* ¶ 19. Thus, because the action was lawful parental

---

[4]Defendant also argues that her convictions offend her protection against double jeopardy as all of the crimes for which she was convicted are subsumed by her conviction for child abuse. However, due to our reversal of Defendant's child abuse conviction, the need to address her double jeopardy argument is obviated.

discipline, and an element of battery is unlawfulness, the defendant's conviction could not stand as it was supported by insufficient evidence. *See id.* ¶¶ 14, 17, 22.

**{12}** At the outset, for purpose of clarity, we note the manner in which Defendant presented her requested instructions to the district court. *See State v. Munoz*, 2006-NMSC-005, ¶ 13, 139 N.M. 106, 129 P.3d 142 (noting that a jury instruction issue can be preserved for appeal by "formal objection . . . or by tendering a correct instruction" (internal quotation marks and citation omitted)). First, during discourse with the district court on the jury instructions, Defendant indicated that she was seeking instructions on parental privilege *only* for the offense of child abuse. Nonetheless, Defendant's requested jury instructions contained a separate instruction for parental privilege, applicable to kidnapping and child abuse. They also included a separate instruction for unlawfulness, applicable to criminal sexual contact of a minor. Finally, they included instructions on false imprisonment[5] and battery,[6] which did not include parental privilege or unlawfulness as listed elements of those offenses.

**{13}** Relying on *Lefevre*, the district court reasoned that a separate, definitional instruction on parental privilege was unnecessary, but granted Defendant's request, in part, by embedding unlawfulness as an element into the instructions for false imprisonment and aggravated battery. The district court also granted Defendant's request to provide a separate instruction for unlawfulness as to aggravated battery that stated, in relevant part, that the State must prove Defendant's "act was unlawful." *See* UJI 14-132 NMRA. The instruction further stated that "aggravated battery . . . do[es] not include a touching or confinement for purposes of reasonable medical treatment, non-abusive parental care, lawful arrest, search or confinement, or reasonable discipline of a child." *See id.* Defendant's requested jury instruction on aggravated battery did not include parental privilege as an element of the offense, nor was this offense included on Defendant's requested separate instruction for parental privilege. Thus, we conclude that Defendant did not preserve an issue for appellate review with respect to the aggravated battery instruction. *See Munoz*, 2006-NMSC-005, ¶ 13 (setting out what is required to preserve issues with jury instructions for appellate review).

**{14}** As to false imprisonment, Defendant now complains that the separate unlawfulness instruction provided to the jury did not mention its applicability to false imprisonment. While false imprisonment arguably should have appeared in the separate unlawfulness instruction tendered to the jury, Defendant was given ample opportunity to remedy this apparent oversight but did not do so. Our review of the record shows that Defendant failed to alert the district court to this issue on at least four occasions. Defendant did not request the instruction during discourse with the district court. Furthermore, she did not raise this issue or object before the finalized jury instructions were presented to the jury, during the district court's recitation of the instructions to the

---

5The district court concluded that the State presented insufficient evidence of kidnapping, but allowed false imprisonment to proceed to the jury as a lesser included offense of kidnapping.
6Defendant originally proposed simple battery as a lesser included offense of criminal sexual contact of a minor. The district court ruled that aggravated battery would be the only lesser included offense on which the jury would be instructed.

jury, or when the State referenced the unlawfulness instruction during closing argument. Under these circumstances, we do not believe that Defendant fulfilled her obligation "to alert the [district] court to the problem with the instruction and to allow the court an opportunity to correct the error." *State v. Suazo*, 2017-NMSC-011, ¶ 27, 390 P.3d 674 (explaining that, under Rule 5-608(D) NMRA, "lawyers [must] object to erroneous instructions").

**{15}**    Defendant has not convinced us that the instructions provided to the jury were contrary to the principle articulated in *Lefevre* or otherwise deprived her of the ability to present parental privilege as a defense; thus, even if error occurred, it did not rise to the level of fundamental error. The district court embedded unlawfulness as an element of the offenses of false imprisonment and aggravated battery, though this was not in Defendant's requested instructions. Additionally, Defendant presented her theory of the case—i.e., that her conduct was lawful parental discipline—to the jury. In light of this, we are unconvinced that fundamental error occurred here. *See State v. Notah*, 2022-NMCA-005, ¶ 25, 503 P.3d 418 (noting that this Court "exercise[s] . . . discretion to apply the doctrine of fundamental error very guardedly" and that it only applies in cases where "the defendant is indisputably innocent, or . . . a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused" (internal quotation marks and citations omitted)), *cert. denied* (No. S-1-SC-39016, Jan. 11, 2022).

**{16}**    For all these reasons, we are satisfied that the jury instructions, as a whole, fairly instructed the jury that it must acquit Defendant should it find her conduct to be lawful discipline. *See State v Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793 (noting that appellate courts "consider jury instructions as a whole").

## C.    Defendant Was Not Entitled to a Jury Instruction on Defense of Another

**{17}**    Defendant argues that an instruction on defense of another was warranted on all charges for which she was convicted. Again, our discussion is limited to the necessity of this instruction for Defendant's false imprisonment and aggravated battery convictions, as we have concluded that Defendant's conviction for child abuse must be reversed. We reject Defendant's arguments.

**{18}**    The district court should instruct the jury on defense of another "if the evidence is sufficient to allow reasonable minds to differ as to all elements of the defense." *State v. Jernigan*, 2006-NMSC-003, ¶ 3, 139 N.M. 1, 127 P.3d 537 (internal quotation marks and citation omitted). Here, to show that Defendant acted in defense of J.F., there must have been evidence that J.F. appeared to be in immediate danger of great bodily harm as a result of S.F.'s conduct; and Defendant believed that J.F. was in immediate danger of bodily harm from S.F. and bit S.F. on his buttocks and restrained or confined S.F. against his will to prevent the bodily harm; and a reasonable person in the same circumstances would have acted as Defendant did because of the apparent danger to J.F. *See* UJI 14-5182 NMRA.

**{19}** With regard to Defendant's conviction for false imprisonment, the facts of this case do not lend themselves to an instruction on defense of another. The evidence at trial established that tying S.F. in a blanket and threatening him with death if he tried to leave were Defendant's final acts before leaving the home. At that point, a significant amount of time had elapsed from Defendant's entry into the family room, and Defendant had already bitten S.F. on the arm, shoulder, and buttocks, taken him to the home's bathroom, forced him into a cold shower, and brought him clothes to wear. Given these facts, we cannot conclude that reasonable minds could differ as to whether J.F. appeared to be in immediate danger. Thus, the defense of another instruction was not justified as to Defendant's conviction for false imprisonment.

**{20}** Likewise, we are unconvinced that the defense of another instruction was required for Defendant's conviction for aggravated battery. Defendant centers her argument primarily on the fact that the testimony at trial did not definitively establish whether J.F. remained in the family room by the time she bit S.F.'s unclothed buttocks, and thus J.F. may have appeared to remain in immediate danger at that time. The State counters that the instruction was not justified because a reasonable person would not have acted with the same force as Defendant. We agree with the State. In our view, even in light of the evidence that S.F. may have been sexually assaulting J.F. when Defendant entered the family room, biting the unclothed buttocks of S.F. in a manner that caused temporary disfigurement was not reasonable or necessary under the circumstances. Therefore, Defendant was not entitled to an instruction on defense of another as it relates to aggravated battery.

## D. Defendant Was Not Entitled to a Jury Instruction on Simple Battery

**{21}** Finally, Defendant argues that she was entitled to a jury instruction on simple battery as a lesser included offense of criminal sexual contact of a minor. The district court agreed to instruct the jury on aggravated battery as a lesser included offense of this charge, but rejected Defendant's position that a simple battery instruction should also be given. We perceive no error in the district court's ruling.

**{22}** In order to reverse a conviction for failure to instruct the jury on a lesser included offense, we must be satisfied that the three-pronged test outlined in *State v. Hill* is satisfied. 2001-NMCA-094, ¶ 16, 131 N.M. 195, 34 P.3d 139. Here, only the second prong, whether "there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed," is disputed by the parties. *Id.* In *Hill*, this Court further articulated that the second prong of the test "consider[s] whether there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable doubt that [the d]efendant committed the lesser included offense while still harboring a reasonable doubt that [the d]efendant committed the charged offense." *Id.* ¶ 17 (internal quotation marks and citation omitted). Accordingly, we limit our analysis to the second prong.

**{23}** We cannot conclude that the district court erred by refusing to give an instruction on simple battery. Defendant challenges the elements differentiating aggravated battery

from simple battery. Specifically, aggravated battery requires "painful temporary disfigurement" and an intent to injure, UJI 14-321 NMRA, whereas simple battery requires that the act be "rude, insolent or angry." UJI 14-320 NMRA. The evidence presented at trial established that Defendant's bite to S.F.'s buttocks caused temporary disfigurement, and he testified that it caused him pain to the point of inability to sit. While Defendant argues that S.F.'s testimony lacked credibility, and it is possible that the jury "could have doubted" her intent to injure S.F. by biting his buttocks, we remain unpersuaded. Reviewing the record in the light most favorable to Defendant, it does not appear that the nature of S.F.'s particular injury was disputed at trial. *See, e.g., State v. Romero*, 2005-NMCA-060, ¶ 18, 137 N.M. 456, 112 P.3d 1113 ("[W]e point out that the [s]tate is viewing the evidence in the light most favorable to the conviction, as it is entitled to do when defending against a sufficiency of the evidence contention. However, when evaluating a defendant's right to have the jury instructed in accordance with the defendant's tendered instructions, we view the evidence in the light most favorable to the giving of the requested instruction." (citation omitted)); *Hill*, 2001-NMCA-094, ¶ 5 ("We view the evidence in the light most favorable to the giving of the requested instruction.").

**{24}** S.F. testified clearly about the bite, and the State presented photos showing what appear to be bite marks. During cross-examination, Defendant did not ask S.F. a single question about the biting or the injuries it produced. Furthermore, during closing Defendant did not argue that the State failed to prove that she bit S.F. or called into question his testimony on this point. In fact, it appears that Defendant concedes that she engaged in some form of violence that resulted in temporary disfigurement. Seemingly, Defendant's theory was not that the violence did not occur, but rather that she acted lawfully in disciplining S.F. Thus, we are unpersuaded that "there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable double that Defendant committed [simple battery] while still harboring a reasonable doubt that Defendant committed [aggravated battery]." *Hill*, 2001-NMCA-094, ¶ 17. Therefore, we conclude that the district court did not err in refusing to give an instruction on simply battery.

### III. Prosecutorial Misconduct

### A. Standard of Review

**{25}** "When an issue of prosecutorial misconduct has been preserved by a specific and timely objection at trial, we review the claim of error by determining whether the [district] court's ruling on the claim was an abuse of discretion." *State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862. In the absence of appropriate objections at trial, our review of alleged prosecutorial misconduct is for fundamental error. *Id.* "An abuse of discretion is a ruling that is clearly against the logic and effect of the facts and circumstances of the case." *State v. Gonzales*, 2017-NMCA-080, ¶ 32, 406 P.3d 534 (internal quotation marks and citation omitted). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). Our conclusion on any issue of prosecutorial

misconduct turns on whether the misconduct alleged "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Wildgrube*, 2003-NMCA-108, ¶ 20 (internal quotation marks and citation omitted).

## B.    Defendant's Claims of Improper Testimony Do Not Require Reversal

**{26}**    Defendant complains that the State improperly solicited opinion testimony from a law enforcement witness concerning Defendant's guilt. Defendant next alleges that the prosecution intentionally elicited testimony concerning the involvement of the New Mexico Children, Youth and Families Department (CYFD) in violation of the district court's ruling excluding such testimony. Defendant points specifically to two instances at trial where witnesses mentioned CYFD in their testimony, one of which Defendant failed to object to. We address Defendant's arguments in turn.

**{27}**    Defendant's first argument concerns testimony offered by APD Detective Chavez. Twice during his testimony, when asked by the State whether he would have sought an arrest warrant for Defendant regardless of her allegations that S.F. was sexually abusing J.F., he responded, "Yes, because there was a crime that had been committed." Defendant moved for a mistrial based on this testimony. The district court denied the motion, reasoning that "[t]he State did not directly elicit that testimony. . . . That was something . . . the witness referenced, although the State did cut him off." The district court also instructed the jury as follows:

> During his testimony Detective Chavez testified to his belief that a crime had, in fact, been committed. Disregard any statement made by Detective Chavez regarding his belief that a crime occurred. These statements shall not enter into your deliberations in any way. You are the judges of the facts in this case. Once all of the evidence has been presented to you and you begin your deliberations, it will be your job to determine whether . . . [D]efendant committed any crime.

**{28}**    Based on our review of the record, we are satisfied that the district court sufficiently remedied any prejudice suffered by Defendant as a result of Detective Chavez's testimony. *State v. Caudillo*, 2003-NMCA-042, ¶ 14, 133 N.M. 468, 64 P.3d 495. Thus, the district court did not abuse its discretion, and we will not disturb the denial of Defendant's request for a mistrial on these grounds.

**{29}**    As to Defendant's first contention regarding the improper mention of CYFD, when the State asked APD Officer Rodriguez where he forwarded his report of his interview with S.F., he responded, "to CYFD." Following this testimony, Defendant moved for a mistrial. Our review of the record reveals that while the State requested permission to elicit this testimony and the district court denied this request, the State also instructed Officer Rodriguez not to mention CYFD unless specifically asked a question about CYFD's involvement in the case. The State's question prior to Officer Rodriguez's mention of CYFD did not specifically call for his answer. The district court allowed the parties to conduct voir dire of Officer Rodriguez outside of the presence of the jury to

determine his understanding of the State's instructions concerning his testimony. The voir dire revealed that Officer Rodriguez did not fully understand the parameters of unacceptable testimony. The district court further admonished the State to instruct its witnesses to refrain from mentioning CYFD. Taken together, we cannot conclude that the district court abused its discretion by denying Defendant's motion for a mistrial.

**{30}** The second instance where CYFD was mentioned came during the testimony of Z.F., S.F.'s younger brother. The State asked Z.F., "How long were you guys in Arizona?" Z.F. responded, "I believe it was . . . January . . . 7th when we got back to New Mexico from . . . Child Protective Services." Defendant offered no objection at the time of this testimony and thus failed to preserve it for appellate review. *See Montoya*, 2015-NMSC-010, ¶ 45 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)). On appeal, Defendant claims that this testimony was "irrelevant and prejudicial." However, a claim of prejudice, without more, does not demonstrate prejudice. *State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611. And, fundamental error occurs only in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633. Because Defendant has provided us with no basis on which to reach such a conclusion, we are satisfied that the testimony complained of does not amount to fundamental error.

## C.    The Remarks Made During Closing Argument Do Not Require Reversal

**{31}** Defendant next contends that certain statements made by the prosecution during closing and rebuttal closing arguments necessitate reversal. Our review of alleged improprieties during closing arguments requires us to consider "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. We evaluate the statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.* "These three factors are useful guides, but in the final analysis context is paramount." *Id.* ¶ 34. "[T]he common thread running through the cases finding reversible error is that the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* Defendant identifies four statements that she alleges were improper.

**{32}** As to the first two statements, Defendant alleges that the State referred to information not in evidence or otherwise distorted evidence when discussing Defendant absconding from the state. Specifically, Defendant argues that the State distorted the evidence presented by stating that law enforcement could not get a statement from Defendant *after* she returned from Arizona, when in fact the evidence showed that law enforcement could not make contact with her *before* she absconded. Defendant next points to a reference to "a multi-state bulletin" the State alleged was used to aid in

Defendant's return from Arizona, claiming this information was not admitted during trial. Defendant objected to both of these statements.

**{33}** After objection to the first statement and subsequent elaboration at a bench conference, the State conceded to misspeaking and offered to backtrack in its closing argument in order to resolve the misstatement. The district court accepted this course of action, and the State resumed its closing by immediately stating that "by the time [Defendant] was brought back, [law enforcement] had already tried to get a statement from her." After objection to the second statement, the State clarified that it was referring to testimony regarding an "all points lookout" or "be on the lookout" notice issued for Defendant. The district court, apparently unsure if such testimony had been elicited, sustained the objection, and instructed the jurors to "rely upon your own memory as to the facts adduced during the course of the trial."

**{34}** As to the remaining two statements, Defendant directs us to the State referring to Defendant's actions as "animalistic" and stating that Defendant "behaved as a monster." Defendant did not object to these statements during trial, but points to a later hearing where she mentioned the statements to ensure "this issue was preserved for appeal." This is not the proper mechanism for preservation. *See State v. Pennington*, 1993-NMCA-037, ¶ 32, 115 N.M. 372, 851 P.2d 494 (stating that where improper commentary by the prosecution during closing argument is alleged, "[t]he proper procedure would have been to object to the statements at the time the prosecutor made them" so that the district court can "assess the prejudicial nature of the statements and take curative steps").

**{35}** We turn now to the *Sosa* factors to assess whether the statements Defendant complains of require reversal. With regard to the first factor, Defendant does not identify a particular constitutional protection offended by any of the statements noted above. In the absence of an identified constitutional protection, in considering the second factor, "we look at the length and repetition of the comment[s] to determine whether it was so pervasive as to clearly distort the body of evidence before the jury." *Sosa*, 2009-NMSC-056, ¶ 38. As outlined above, the first statement Defendant complains of was readily cured, and the second was indeed a reference to a fact in evidence. Thus, we consider these statements no further and proceed to analyze the final two statements only through the lens of fundamental error. *See Wildgrube*, 2003-NMCA-108, ¶ 20.

**{36}** One of these remaining statements occurred during the State's closing argument, and the other during rebuttal closing argument. For this reason, assuming the statements amount to prosecutorial misconduct, we cannot characterize them as ubiquitous. Finally, as to the third factor, it is clear that Defendant, in her closing argument, did nothing to invite the statements of which she complains. *See Sosa*, 2009-NMSC-056, ¶ 33 (noting that we are less likely to hold that error occurred when alleged improper commentary is invited by the defendant). Again, even assuming that the statements amount to prosecutorial misconduct, however, the want of invited statements is insufficient to convince us that Defendant was denied a fair trial. *See id.* ¶ 35 (explaining that, under fundamental error review, we must be satisfied that the defendant's right to a fair trial was undermined before we reverse the jury's verdict). Therefore, the statements that

Defendant alleges contributed to prosecutorial misconduct do not amount to fundamental error.

**CONCLUSION**

**{37}** Defendant's conviction for child abuse is reversed for lack of sufficient evidence. We affirm the district court in all other respects.

**{38}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**