This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40781**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MODA JAMES BENTLEY a/k/a
MODA J. BENTLEY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Moda James Bentley was convicted of one count of aggravated battery with great bodily harm for stabbing Victim. On appeal, Defendant argues that (1) the district court erred by denying his requested self-defense instruction; and (2) trial counsel's failure to secure a medical expert to testify on his behalf constitutes ineffective assistance of counsel. For the reasons articulated below, we affirm.

**BACKGROUND**

**{2}**     Defendant and Victim, who had known each other for many years, were at Victim's house drinking and smoking marijuana. After Victim's wife came home from work, the mood changed and Victim perceived that his wife was uncomfortable, so Victim said that it was time to take Defendant home, to which Defendant replied, "Okay, let's go." Defendant first tried to get a ride home from his mother because Victim had been drinking and he did not want to "get fucked up." Ultimately, Victim gave Defendant a ride.

**{3}**     On the ride home, as Victim turned out of his driveway, the mood again changed and Defendant got out of Victim's truck. Attempting to get Defendant to follow him back to his truck, Victim grabbed ahold of Defendant by his jacket. As Victim was turning around to walk back to the truck and pulling Defendant by the jacket, Defendant stabbed Victim twice in the back. After being stabbed, Victim returned home and sat in his truck in shock. However, Victim drove back to the side of the road and tried again to get Defendant into his truck to take him home, at which time Defendant stabbed Victim again—this time in the chest.

**DISCUSSION**

**I.     Self-Defense Instruction**

**A.     The District Court Did Not Err by Denying Defendant's Requested Self-Defense Instruction**

**{4}**     Defendant first argues that the district court erred in refusing to give the jury his requested self-defense instruction. The State contends that Defendant failed to preserve this claim of error for appellate review. Even assuming, without deciding, that Defendant's jury instruction claim was properly preserved, for the reasons that follow, we conclude the district court did not err in refusing to give a self-defense instruction in this case.

**{5}**     "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Guerra*, 2012-NMSC-014, ¶ 13, 278 P.3d 1031 (internal quotation marks and citation omitted); *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. "When considering a defendant's requested instructions, [appellate courts] view the evidence in the light most favorable to the giving of the requested instructions." *State v. Baroz*, 2017-NMSC-030, ¶ 15, 404 P.3d 769 (alteration, internal quotation marks, and citation omitted). "A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170. The elements of self-defense are: "(1) an appearance of immediate danger of death or great bodily harm to the defendant; (2) the defendant was in fact put in such fear; and (3) a reasonable person would have reacted in a similar manner." *State v. Martinez*, 1981-NMSC-016, ¶ 4, 95 N.M. 421, 622 P.2d 1041; *see* UJI 14-5183 NMRA. "The first

two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Rudolfo*, 2008-NMSC-036, ¶ 17 (internal quotation marks and citation omitted).

**{6}** Assuming, without deciding, that Defendant established the first two elements, we conclude that he failed to establish the third element—that a reasonable person would have reacted in a similar manner. We explain.

**{7}** We acknowledge that testimony was elicited at trial from Defendant's mother and designated caregiver providing context as to the nature and extent of Defendant's previous injuries and his resulting medical fragility. Defendant's mother testified that Defendant had previously sustained a "major anoxic brain injury" following a suicide attempt and a spinal injury as a result of a fall off a cliff. Consequently, Defendant required ongoing, full-time medical care and assistance with daily tasks like bathing, eating, and dressing.

**{8}** Also, as a consequence of these injuries, the muscles in Defendant's arms and biceps atrophied, Defendant would lose his balance, his legs would go out, and he would hit the ground. When Defendant would fall, someone would have to help him get back up. As a result of these medical conditions, Defendant's mother was fearful that any fall at all could paralyze Defendant forever, and she discussed these fears with Defendant often. Additionally, because Defendant had suffered several falls that would leave him in tears, Defendant's mother stated, "[Defendant] was terrified . . . [and] so, so afraid that he was gonna end up in a wheelchair and never be able to walk again." Finally, Victim knew of Defendant's health issues, that Defendant's back or neck was injured when he fell off of a cliff, and that this was something Victim had to be careful with.

**{9}** We agree that Defendant's medical fragility is appropriately considered in evaluating the objective reasonableness of Defendant's actions under the third element of self-defense. *See Baroz*, 2017-NMSC-030, ¶ 14 ("[T]he third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person *acting under the same circumstances as the defendant*." (emphasis added) (internal quotation marks and citation omitted)). Nevertheless, we conclude that it was objectively unreasonable for Defendant to have used deadly force under the circumstances.

**{10}** This was not a case where a stranger grabbed Defendant and attempted to harm him with a weapon. Here, Defendant's unarmed, long-time friend grabbed ahold of Defendant's jacket in an attempt to get Defendant to come back to Victim's truck. We conclude that Defendant's response—stabbing his friend multiple times with a knife—constituted a disproportionate and therefore unreasonable amount of force under the circumstances. In such a situation, Defendant could, and should, have used nondeadly force. *See State v. Duarte*, 1996-NMCA-038, ¶ 8, 121 N.M. 553, 915 P.2d 309 (stating that under New Mexico law "there must have been some evidence that an objectively

reasonable person, put into [the d]efendant's subjective situation, would have thought that [the individual whom the defendant sought to protect] was threatened with death or great bodily harm, *and that the use of deadly force was necessary to prevent the threatened injury*" (emphasis added)). Because the threatened injury in this case could have been prevented by means not involving deadly force, we conclude that the district court did not err by denying Defendant's requested self-defense instruction.

## II. Ineffective Assistance of Counsel

### A. We Decline to Presume Prejudice Under *State v. Schoonmaker*

**{11}** Defendant next argues that his convictions should be reversed because of his trial counsel's failure to secure a medical expert to testify on his behalf, which, he contends, was ineffective assistance of counsel. In making this argument, Defendant argues that *Schoonmaker*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105, *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850, *and abrogated on other grounds by State v. Montoya*, 2015-NMSC-010, ¶ 36, 345 P.3d 1056, controls.

**{12}** In *Schoonmaker*, trial counsel indicated to the district court that his client could not pay for any experts, informed the district court that he would be rendering ineffective assistance if he went to trial without the assistance of experts or the ability to interview the state's experts, and sought to withdraw so that the Public Defender Department could assume all costs of the defense. *Id.* ¶¶ 36, 40. The district court, however, refused to allow trial counsel to withdraw, thus occasioning ineffective assistance of counsel. *Id.* ¶ 36. In concluding that the defendant was deprived of effective assistance of counsel, our Supreme Court held that "[a] presumption of prejudice . . . applies when counsel's potential ineffectiveness is expressly brought to the attention of the district court *and is occasioned by the rulings of the court itself*." *Id.* ¶¶ 36, 41 (emphasis added).

**{13}** In the case before us, the district court ruled that Defendant could call his treating physician as an expert witness if the defense provided him for a pretrial interview by a certain date, but that no other defense expert would be permitted. The record is devoid of any other efforts to secure testimony by Defendant's treating physician. Thus, unlike in *Schoonmaker*, it was not the ruling of the district court that occasioned any alleged ineffective assistance; indeed, the district court's ruling permitted counsel to call a treating physician. Thus, we decline to presume prejudice under *Schoonmaker*.

### B. Trial Counsel's Failure to Secure a Medical Expert to Testify on Defendant's Behalf Does Not Constitute Ineffective Assistance of Counsel

**{14}** "Defendant has the burden of showing ineffective assistance of counsel" and "[a]ssistance of counsel is presumed effective unless . . . [D]efendant demonstrates *both* that counsel was not reasonably competent *and* that counsel's incompetence caused the defendant prejudice." *See State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 (emphasis added) (internal quotation marks and citation omitted).

Here, even if trial counsel was not reasonably competent, we conclude for the following reasons that Defendant has not proved the requisite prejudice. *See State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 (explaining that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed" (omission, internal quotation marks, and citation omitted)).

**{15}**    In order to prove the requisite prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Trujillo*, 2002-NMSC-005, ¶ 38 (alteration, internal quotation marks, and citation omitted). "We consider the entire proceeding as a whole and judge any claim of ineffectiveness on whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* ¶ 47 (internal quotation marks and citation omitted).

**{16}**    Defendant argues on appeal that expert testimony was vital in his case because "the exact nature of [Defendant's] physical condition was critical for the jury and the [d]istrict [c]ourt to understand to appreciate why self-defense was warranted under these circumstances." As an initial matter, Defendant did not advance this argument at trial. Instead, before the district court, Defendant consistently asserted that the expert he sought was a physical therapist who could testify that Defendant was incapable of chasing and stabbing Victim.

**{17}**    Nonetheless, even if, as he argues on appeal, Defendant sought expert testimony to describe the exact nature of his physical condition and to explain to the jury and the district court why self-defense was warranted under these circumstances, we are not persuaded that Defendant has shown a reasonable probability that but for the failure to hire such an expert the result of the proceeding would have been different. Defendant's mother and primary caretaker testified at length as to the nature and extent of Defendant's medical fragility. While the corroborating testimony of a medical expert may have bolstered Defendant's argument that he was in fear of death or great bodily harm under the circumstances, the absence of such testimony did not render the results of Defendant's trial unjust. *See State v. Sloan*, 2019-NMSC-019, ¶ 56, 453 P.3d 401 ("[Our Supreme Court] has expressly rejected the contention that the failure to introduce the testimony of an expert witness constitutes ineffective assistance of counsel per se." (internal quotation marks and citation omitted)). We therefore conclude that any failure to secure a medical expert to testify on Defendant's behalf did not amount to ineffective assistance of counsel, given the record before us.

**CONCLUSION**

**{18}**    For the reasons stated above, we affirm.

**{19}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**MEGAN P. DUFFY, Judge**